UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-193-JBC

LONNETTA MEDCALF                                                          PETITIONER

VS:                              **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT, ET AL.                                          RESPONDENTS

Lonnetta Medcalf, who is incarcerated in the Federal Medical Center in Lexington ("FMC-Lexington"), Kentucky, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking immediate placement in a Residential Re-Entry Center ("RRC") pursuant to 18 U.S.C. § 3621. [Dkt. 2]. This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002) (unpublished disposition).

As Medcalf is appearing *pro se*, her petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in her petition are taken as true and liberally construed in her favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

**BACKGROUND**

On June 19, 2006, Medcalf pleaded guilty to aggravated identity theft and unauthorized use of an access device in violation of 18 U.S.C. §§ 1028A; 1029(a)(2), 2. On September 8, 2006, she was sentenced to a 25-month term of incarceration to be followed by a 3-year term of supervised release. On October 25, 2006, Medcalf self-surrendered into the custody of the Bureau of Prisons

1

("BOP"), and was placed at FMC-Lexington.  *United States v. Medcalf*, Eastern District of Missouri, 06-CR-257.  [Dkt. 19, 26 therein]

Four days after her surrender, BOP staff completed a Program Review Report for Medcalf. Page two of that report includes the notation: "CCC Recommendation:  PRPD 6-13-2008." According to the BOP, this notation indicates a preliminary recommendation that Medcalf's Pre-Release Preparation Date ("PRPD") be set for June 13, 2008.  This date is established relative to her Projected Release Date ("PRD") on August 17, 2008, a date based upon the full term of her sentence less Good Conduct Time.

Three months later, on February 9, 2007, Medcalf filed a Request for Administrative Remedy, Form BP-229, with the warden, asking that she be placed in a RRC for the last 180 days of her sentence.  Rejecting the request, the warden stated that "Your PRPD is the earliest you can receive a RRC placement."  In her March 11, 2007, appeal to the Regional Director, Medcalf asserted that the warden's position and the BOP's regulations set forth at 28 C.F.R. § 570.20 were rejected by the Eighth Circuit in *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) and the First Circuit in *Falts v. Sanders*, 442 F.3d 1088 (1st Cir. 2006).  In response, the Regional Director indicated that the notation on Medcalf's Program Review Report, completed 4 days after her arrival, was not a final recommendation from her Unit Team regarding  a placement date in a RRC, a recommendation that would not be made until "11-13 months prior to your projected release date." In her April 11, 2007, appeal to the Central Office, Medcalf asserted that her RRC recommendation was indeed final, and reiterated her position that a categorical exclusion from consideration for RRC placement was contrary to the applicable statute.  The Central Office did not issue its response until June 20, 2007, for reasons not disclosed in the record.  In it, the Central Office concurred with the basis used by the Regional Office to reject the grievance, namely "the notation on your October 29, 2006 Program Review Report ... is not a final and specific release preparation plan."  Medcalf filed her petition for a writ of habeas corpus in this Court on June 6, 2007.

2

**DISCUSSION**

A.    Exhaustion of Administrative Remedies

Federal prisoners are ordinarily required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241.  *United States v. Oglesby*, 52 Fed.Appx. 712, 714 (6th Cir. 2002); *United States v. Wilson*, 503 U.S. 329, 335 (1992).  This requirement is not mandated by the Prison Litigation Reform Act, but is well established as a matter of federal common law.  *Wesley v. Lamanna*, 27 Fed.Appx. 438, 438-39 (6th Cir. 2001).

The exhaustion requirement mandates that a prisoner await a final response from the BOP's Central Office ***before*** filing a habeas corpus petition.  Here, the Central Office did not issue its final decision denying Medcalf's grievance until June 20, 2007, two weeks after she had filed her habeas corpus petition.  While the Court would ordinarily dismiss such a petition as prematurely filed, the Court exercises its discretion to waive this requirement to avoid a wholly unnecessary delay in the consideration of the petition on the merits.  *Davis v. Keohane*, 835 F.2d 1147, 1149 (6th Cir. 1987).  In addition, this Court and others have found that in light of the BOP's consistent stance on the issue presented in this position, exhaustion of administrative remedies is futile. *Colton v. Ashcroft*, 299 F.Supp.2d 681, 684 (E.D. Ky. 2004).

B.    Existence of a Final Recommendation for Placement

In its response to Medcalf's inmate grievance, the BOP stated that the Unit Team's notation on Medcalf's Program Review Report, prepared just days after Medcalf's arrival at FMC-Lexington, was not a final recommendation for RRC placement.  The BOP further indicated that Medcalf would not receive such a final recommendation until approximately one year before her projected release date.  The BOP's practice of not making a final decision assigning a date for a prisoner's placement in a RRC until 11-13 months before their PRPD is consistent with BOP's Program Statement 7310.04 and the relevant BOP regulations, 28 C.F.R. § 570.20-.21.

3

Ordinarily, the Court will not review an agency action until it is final -- that is, until the agency has actually made a decision. Here, the BOP has responded that it has yet to make a final decision regarding Medcalf's placement. However, by declining to make a "final decision" regarding Medcalf's placement until approximately one year before her release date, the BOP has implicitly decided that Medcalf cannot be placed in a halfway house before that time. That decision is, of itself, necessarily final, and as Medcalf's petition seeks an RRC placement before that date, the BOP's refusal to act before that time is subject to review in habeas. *E.g., Jones v. Watkins*, 422 F. Supp. 1268 (N.D. Ga. 1976) (Navy's delay in issuing final denial of reservists' petitions for discharge was tantamount to denial and excused reservists' failure to exhaust their administrative remedies within the Navy before seeking habeas corpus).

C.    Validity of the Bureau of Prisons' Placement Regulations

The regulations issued by the BOP to determine whether and when an inmate should be placed in an RRC have an extensive history, and their validity has been widely litigated in this and other courts. A brief summary of that history is helpful in analyzing Medcalf's current claim.

The BOP's authority to determine at what facility to place inmates in its custody is governed by statute:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

4

> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b).  By its terms, this section requires the BOP to consider the five enumerated factors in deciding where to place an inmate to serve his or her sentence.

To facilitate an inmate's successful reintegration into society upon completion of his or her sentence, Congress also directed the BOP to place inmates in "halfway houses" during the final ten percent of that sentence where possible:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

1.   History of the BOP's Implementing Regulations

Before December 20, 2002, the BOP interpreted Section 3624(c) as requiring the BOP to utilize halfway houses for the last ten percent of an inmate's sentence, but not as a limit on its authority under Section 3621(b) to designate an inmate to a halfway house before that time.  In BOP Program Statement 7310.04, effective December 16, 1998, the BOP stated "the Bureau is not restricted by § 3624(c) in designating a CCC [now RRC] for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate."  During this period it was commonplace for the BOP to place inmates in RRCs for the

5

last six months of their sentences regardless of the length of that sentence.

On December 13, 2002, the Department of Justice ("DOJ") issued a memorandum which stated that this approach was incorrect. The DOJ concluded that an RRC was not a "penal or correctional facility" within the meaning of Section 3621(b), and therefore Section 3624(c) provided the only authority for RRC placement. Accordingly, the DOJ concluded that RRC placements must be limited to the last ten percent of the inmate's sentence, not to exceed six months. The BOP conformed its practice to the DOJ memorandum a week later.

The BOP's policy change generated immediate and substantial litigation. A number of courts held that the BOP's change in policy was contrary to the controlling statute, *Goldings v. Winn*, 383 F.3d 17, 22-23 (1st Cir. 2004); *Elwood v. Jeter*, 386 F.3d 842, 845-47 (8th Cir. 2004), constituted a new regulation not promulgated in compliance with the Administrative Procedures Act ("APA"), *Pinto v. Menifee*, 2004 WL 3019760, *4-5 (S.D.N.Y. 2004), and violated the Ex Post Facto Clause, *Iacaboni v. United States*, 251 F.Supp.2d 1015, 1018 (D.Mass. 2003). But see *Esposito v. Ashcroft*, 2005 WL 119872 (N.D. W.Va. 2005) (rejecting *Goldings* and *Elwood*); *Cohn v. Federal Bureau of Prisons*, 302 F.Supp.2d 267, 271-75 (S.D.N.Y. 2004) (rejecting statutory interpretation claim, concluding that Section 3624(c) is controlling and unambiguous, and rejecting APA and Ex Post Facto Clause claims).

In the face of increasing judicial hostility to the policy change, the BOP proposed new regulations in August 2004 which became final in January 2005. Relying in substantial part on the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230 (2001), the BOP indicated that, exercising its discretion "categorically" with respect to all inmates, 28 C.F.R. § 570.20(a), it would place an inmate in an RRC pursuant to Section 3621(b) **only** for the purpose of pre-release custody under Section 3624(c), and for no other purpose. 28 C.F.R. § 570.21(a). Because RRC placements would thereafter be only for pre-release purposes, all such placements would be

6

subject to Section 3624(c)'s limitation to the last ten percent of the inmate's sentence, up to six months.  In sum, the 2005 regulations made express what the BOP had previously implied: all placements in community confinement were for the purpose of pre-release preparation, and hence subject to Section 3624(c)'s time limitations.

As with the informal policy change before it, the new BOP regulations generated substantial litigation.  While early decisions by district courts generally upheld the regulations, *e.g. Turtle v. Francis*, 2005 WL 3504410, * 4 (S.D. Tex. 2005), subsequent decisions by four circuit courts of appeal found the regulations invalid.  *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 245-49 (3rd Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Levine v. Apker*, 455 F.3d 71, 76, 87 (2nd Cir. 2006); *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007).  The Sixth Circuit Court of Appeals has not yet rendered a decision regarding the validity of the regulations.

The first of these decisions, *Woodall*, exemplifies the approach taken by the courts of appeal striking down the BOP regulations.  The Third Circuit first held that placement decisions were governed directly by Section 3621(b), which clearly and unambiguously required the BOP to consider the five enumerated factors when deciding where to house the inmate.  *Woodall*, 432 F.3d at 245-46.  The court then rejected the BOP's reliance on *Lopez*, holding that the language of the statute in this case required, by its terms, an individualized determination of three of the five factors, thus precluding the use of the categorical approach undertaken by the BOP in 28 C.F.R. § 570.20.  *Id*. at 246-47.  Third, analyzing the regulations under *Chevron*, the court found that no deference was due the BOP's interpretation embodied in the regulations because the relevant statute, Section 3621(b), was unambiguous.  The Third Circuit also held that, even affording the regulations *Chevron* deference, they were an impermissible interpretation of the statute because they did not permit the BOP to consider all of the factors mandated by the statute.  *Woodall*, 432 F.3d at 248-49.  The decisions of the Eighth, Second, and Tenth Circuits invalidating the BOP regulations largely follow the same analytical path.

7

Writing in dissent in *Woodall*, Judge Fuentes agreed with the majority that the BOP must consider the factors identified in Section 3621(b) when making any placement decision, but agreed with the BOP that because Section 3624(c) does not require the BOP to place an inmate in an RRC for more than six months or the last ten percent of her term of incarceration, *Lopez* permitted the BOP to categorically deny such placement before that consideration became mandatory under Section 3624. *Id*. at 251-53. One judge on each panel in the Eighth and Seventh Circuit decisions dissented on functionally similar grounds. *Fults*, 442 F.3d at 1093 (Riley, J., dissenting ); *Levine*, 455 F.3d at 87(Raggi, J., dissenting).

The decisions of the courts of appeal are intriguing in that, while the arguments of each side, either striking down or upholding the BOP regulations, function as an internally coherent whole, they nonetheless reach antithetical results without clearly and directly repudiating the analysis of the opposing view. In cases such as these where it is not evident that either side fully grasps the argument of the other, sometimes unexpressed assumptions lie at the base of the disagreement. Having reviewed these decisions in some depth, the court concludes that such inconsistent assumptions may have been outcome-determinative.

      2.    <u>Analysis of the BOP Regulations under *Chevron*</u>

The BOP's regulations are indeed invalid, albeit for somewhat different reasons than those articulated by the circuit courts of appeal that have considered the issue. Of particular importance to petitioner, the Court's reasoning also dictates a different interpretation of the BOP's authority and obligations under Section 3621 and 3624, which under the circumstances presented here, requires that Medcalf's petition for habeas corpus be denied.

While 28 C.F.R. § 570.20(a) explains that the BOP's regulations were the product of its "categorical exercise of discretion for designating inmates", the operative provision at issue is set

forth in the section immediately following:[1]

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program ... or shock incarceration program) ...

28 C.F.R. § 570.21.  The language of subsection (a) is drawn directly from 18 U.S.C. § 3624(c).

Courts conduct a two-step inquiry to determine whether a federal agency's regulations are valid.  *Citizens Coal Council v. United States Environmental Protection Agency*, 447 F.3d 879, 889 (6th Cir. 2006).  First, the Court examines the statute itself to determine "whether Congress has directly spoken to the precise question at issue."  *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  If applying traditional tools of statutory interpretation provides a clear answer as to Congress' intent, the statute controls, and "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.*; *Harris v. Olszewski*, 442 F.3d 456, 466 (6th Cir. 2006).  However, if the statute is either silent as to the precise question at issue or does not answer the question unambiguously, the court must not "simply impose its own construction on the statute," but instead must decide "whether the agency's answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843;

---

[1]  The Court need not determine whether the BOP's "categorical exercise" of its discretion is permissible under *Lopez* because regardless of the legal justification articulated by the BOP for promulgating the regulation, the ultimate determination under *Chevron* is whether the *operative* language of the regulation faithfully carries out the command of the predicate statute.  The Court's discussion is therefore limited to the substantive provision of the regulation, 28 C.F.R. § 570.21.  It is noteworthy that none of the four courts of appeal used their rejection of the BOP's reliance on *Lopez* as the sole basis for invalidating the regulation.  To the extent any discussion of *Lopez* is necessary, the Court concurs with the reasoning of the courts of appeal that the BOP's reliance on *Lopez* is misplaced in light of the individualized consideration required by the text of Section 3621(b).  *Levine*, 455 F.3d at 85-86.

*Littriello v. United States*, 484 F.3d 372, 377 (6th Cir. 2007).  As long as the agency's interpretation of the statute is permissible, the court will not second-guess the agency, and the regulation must stand as a valid exercise of the agency's rule-making authority.  *Id*.

As previously noted, several courts of appeal have determined that the BOP has failed to satisfy even the first threshold requirement for deference under *Chevron*, holding that the governing statute, Section 3621, is clear and unambiguous.  *E.g., Woodall*, 432 F.3d at 248-49. Interestingly, the judges speaking in dissent reached the opposite result not by finding that Section 3621 is ambiguous, but by finding that Section 3624 is the controlling statute and unambiguously addresses the issue at hand.  *Woodall*, at 251 (Fuentes, J., dissenting); *Fults*, 442 F.3d at 1093 (Riley, J., dissenting).  The Court must respectfully disagree with both conclusions.

Before a court may review the controlling statute to determine "whether the intent of Congress is clear as to the precise question at issue," the court must identify "the precise question at issue."  The courts of appeals have assumed, without discussion, that because the issue involves placement of an inmate in an RRC, the controlling statute is Section 3621, which governs inmate placements.  However, this characterization of the issue is far too simplistic.  Indeed, both the majority opinions and dissents generally agree that, notwithstanding the BOP's argument to the contrary, the five enumerated factors set forth in Section 3621 must be considered for every inmate placement, whether to an RRC or otherwise.  *E.g.*, *Fults*, 442 F.3d at 1091-92 (majority opinion), 1093 (Riley, J., dissenting).

The "precise question at issue" in these cases is not whether the BOP must consider the Section 3621(b) factors in deciding whether to place an inmate in a RRC, as clearly it must, but instead whether the specific limitations described in Section 3624(c) apply to limit the broader, more general grant of authority to the BOP found in Section 3621(b).  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S.Ct. 2518, 2534 (2007) ("In making the threshold determination under *Chevron*, a reviewing court should not confine itself to examining a particular statutory provision

10

in isolation.  Rather, the meaning – or ambiguity – of certain words or phrases may become evident only when placed in context.") (internal quotations marks and citations omitted).  This is how the BOP has characterized the issue since at least 1998.  BOP Program Statement 7310.04 ("The Bureau is not restricted by § 3624(c) in designating [under Section 3621(b)] a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate.").  Curiously, the courts of appeal seem to have initially recognized this, but nonetheless failed to apply this consequence to their statutory analysis under *Chevron*.  *See Wedelstedt*, 477 F.3d at 1163 ("[t]he relationships *between the two statutes* and between § 3621(b) and the regulations at issue lie at the core of the dispute before this court.") (emphasis added); *Woodall*, 432 F.3d at 239 ("This appeal turns on the interpretation of two statutes."); *Levine*, 455 F.3d at 73, 74 ("The first agency action, a policy implemented by the BOP in December 2002 ... construed two provisions of the Sentencing Act, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)") ("Two statutes are the basis of the BOP's authority with respect to placement and transfers of federal prisoners.").

Under *Chevron*, the first task, therefore, is to determine whether Sections 3621(b) and 3624(c), individually or collectively, clearly answer the "precise question at issue":  whether the restrictions on the BOP's authority for RRC outplacements in Section 3624(c) limit its more general authority to place an inmate in a RRC under Section 3621(b).

Whether by its express terms or by implication, Section 3621(b) simply does not address the question.  Being the more general statute, Section 3621 grants the BOP broad authority to make all inmate placement decisions; indicates five factors the BOP should utilize in making each placement; directs the BOP to consider the same factors in making transfer placement decisions; and directs the BOP to provide drug counseling where possible.  Section 3624(c), while the more specific statute, also fails to provide a clear answer.  Section 3624(c) establishes a requirement for one particular placement decision:  it mandates that the BOP must, if practical, place each inmate

in a location designed to facilitate a smooth return to free society, during the last ten percent of the inmate's sentence, for up to six months. The two provisions also do not self-evidently conflict: Section 3621(b) describes factors to be used in making all placement decisions; Section 3624(c) describes, for one particular placement decision, the nature of the facility where the inmate is to be placed and when the inmate may be placed there. Because the pertinent statutes fail to provide a clear answer to "the precise question in issue," the first predicate for *Chevron* deference is satisfied. *Harris*, 442 F.3d at 466.

Before the Court must defer to the BOP's regulations, however, the Court must also determine whether 28 C.F.R. § 570.21 is the product of a "permissible construction of the statute." *Chevron*, 467 U.S. at 843; *Littriello*, 484 F.3d at 377. In each of the dissenting opinions, the authors accepted a premise central to the DOJ's 2002 memorandum and the BOP's subsequent policy change: Section 3624(c) unambiguously controls RRC placements, and the statute expressly does not permit such placements for more than six months during the last ten percent of an inmate's sentence. The dissenters therefore concluded that *Chevron* deference was not even necessary to uphold the rule change because the DOJ was simply correct in its interpretation, reversing a longstanding (albeit incorrect) practice of the BOP.

For their part, the majority opinions agreed that Section 3624(c) controls RRC placements, but nonetheless viewed Section 3624(c)'s "temporal requirements" differently, concluding that Section 3624(c)'s *requirement* – that the BOP consider (and, where practical, assure) placement of all inmates in an RRC during the last ten percent of their sentences – does not affect the BOP's *permissive* authority under Section 3621(b) to consider placing an inmate in a RRC at any time before that point. Under this view, before the last ten percent of an inmate's sentence, Section 3624(c) simply has no relevance at all. *Wedelstadt*, at 1166 ("Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on

12

whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration"); *Woodall*, 432 F.3d at 250 ("[Section] 3624 does not determine when the BOP should *consider* CCC placement, but when it must *provide* it."); *Elwood*, 386 F.3d at 847 ("Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more.  Under § 3624(c) the BOP must formulate a plan of pre-release conditions.")

Again, the Court must respectfully disagree with both interpretations.  The BOP and the dissenters view Section 3624(c) too broadly, and the majority opinions view that section too narrowly.  Any statutory analysis must begin with the operative language of the text itself:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).  The first noteworthy aspect of this provision is that the congressional command embodied in its text is mandatory, not permissive: the BOP "*shall* ... assure" RRC placement under the terms described.  While the BOP position and the majority opinions are consistent in their agreement with this starting point, the BOP and the dissenters draw from the text the negative implication that RRC placement is not permitted for any period "to exceed six months." As discussed below, this conclusion is incorrect.

Section 3624(c) constitutes a single sentence, containing two logical components.  The first is a temporal one, which limits the operative scope of the provision to "a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served" by "a prisoner serving a term of imprisonment."  The second is a purposive component, requiring that time period to be served "under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

The majority opinions and the dissenters appear to share a common comprehension and understanding of the first component, agreeing that Section 3624(c) applies during the last ten

13

percent of an inmate's sentence to assure RRC placement for a period of up to six months.  The dissenters then go further to conclude that the limitation on such RRC placements, for no more than six months, prohibits any RRC placement for a longer period.  This conclusion appears to be based upon the assumption that the second component of the sentence, "conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" should be logically equated with placement in an RRC.  Such a reading is overbroad and unjustified in light of the statutory text.

As noted above, the second component of the statute describes the *purpose* of the confinement, rather than describing a particular *place* of confinement.  The congressional mandate here is to place the inmate under any "conditions that will afford the prisoner a reasonable opportunity *to adjust to and prepare for the prisoner's re-entry into the community*." (emphasis added).  While RRCs may be utilized for such a purpose, the statute requires inmate placement in any location that provide these "conditions," not any particular place.  By too readily equating one of the purposes which an RRC is designed to serve and the RRC itself, the DOJ impermissibly broadened the scope of Section 3624(c) far beyond its intended reach.

Support for this reading of the statute is found not only in the literal text of Section 3624(c), but in two other sources.  The first is the fact that RRC placements are made at the outset of a sentence for purposes other than preparation for return to society:

> ... the advantages of community confinement to defendants *constitute only a fraction of their particular usefulness*.  For innocent third parties, particularly children, the economic and emotional devastation caused by a parent's distant incarceration can be, to some extent, palliated.  With the inmate employed, families can stay off welfare; with a parent available, children can avoid placement in foster homes.  For the Government wishing to recognize substantial assistance provided by a cooperating defendant this option also holds out advantages during plea negotiations, and at sentencing.

*Iacaboni v. United States*, 251 F.Supp.2d 1015, 1022-23 (D. Mass. 2003) (emphasis added) (judicial recommendation that inmate serve entire term of incarceration in RRC in order to permit

(1) one defendant to continue legitimate small business employing several people; (2) another defendant to support wife and small children; and (3) a third defendant to care for his aging adult parents).   The DOJ's logical substitution of the place itself in lieu of one expressed purpose for which that place is designed therefore contravenes not only the text of the statute itself, but is contraindicated by the myriad purposes for which RRC placements are actually made.   The Court must therefore conclude that inmate placement in an RRC for any other purpose, unrelated to the inmate's "adjust[ment] to and prepar[ation] for the prisoner's re-entry into the community," falls outside the scope of Section 3624(c)'s requirements and limitations.

This reading of Section 3624(c) is also bolstered by the structure and organization of Section 3624 itself as well as its adjoining statutes.   *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005) ("In order to determine the scope [of a statute], we must examine the statute's text in light of context, structure, and related statutory provisions.").   Section 3621 is entitled "Imprisonment of a Convicted Person," and subsection (a), entitled "Commitment to Custody of Bureau of Prisons," indicates that those convicted of federal crimes are given over to the custody of the BOP.   Subsection (b) governs the initial placement and subsequent transfer of the inmate to a place of confinement.   The subject matter of Section 3621 clearly relates to an inmate's initial surrender to and custody of the BOP after the criminal sentence is imposed. Subsequent sections, Section 3622 ("Temporary Release of a Prisoner") and Section 3623 ("Transfer of a prisoner to State authority"), relate to custodial matters arising during the central portion of an inmate's incarceration.   Finally, Section 3624, entitled "Release of a Prisoner" governs custodial matters towards the end of an inmate's sentence, including calculation of the inmate's "(a) Date of Release" and "(b) Credit Toward Service of Sentence for Satisfactory Behavior." 18 U.S.C. § 3624(a), (b).   Likewise, Section 3624(c)'s intended scope is strongly suggested by its title: "Pre-Release Custody."   Subsequent sections relate to providing the inmate with clothing, funds, and transportation upon his or her immediate release and the inmate's service of his or her term of

15

supervised release after the term of incarceration is completed.  18 U.S.C. §§ 3624(d),(e).  This orderly progression of statutes tracks the inmate's initial surrender to custody and placement through the term of incarceration, pre-release to a halfway house, and post-incarceration service of the term of supervised release.  This structure indicates that Section 3624(c) was designed to apply to the period of time approaching the end of the inmate's term of incarceration for the purpose of addressing issues likely to arise as the inmate makes the transition from incarceration back to the freedom of open society.  Applying the subsection to earlier time periods or for other purposes fails to acknowledge the role the provision was designed to play as part of a coherent whole.  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S.Ct. 2518, 2534 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal quotations marks and citations omitted).

The Court therefore concludes that the language of the statutory text itself, as well as the structure of the immediate and surrounding statutes, indicates that Section 3624(c) applies to "pre-release" custody for the purpose of preparing the inmate for return to free society, rather than to all commitments to RRC custody irrespective of the purpose for the placement.  Because 28 C.F.R. §§ 570.20-.21 apply Section 3624(c)'s ten percent/six month limitations to all RRC placement decisions, not merely those designed to assist the prisoner "to adjust to and prepare for ... re-entry into the community," the BOP's regulations do not constitute a permissible interpretation in light of the statute's express terms, and therefore must be found invalid.  *Chevron*, 467 U.S. at 842; *Littriello*, 484 F.3d at 377.

However, as previously noted, while the Court finds that the BOP's regulations interpret the scope of Section 3624(c) too broadly, the Court also finds that the decisions reached by several courts of appeal interpret the scope of Section 3624(c) too narrowly, for the same reasons identified above.  In those decisions, the courts of appeal determined that Section 3621(b)'s

16

authorization for the BOP to make a placement "at any time" permitted the BOP to transfer an inmate to an RRC at any point during the inmate's incarceration, notwithstanding Section 3624(c)'s temporal limitations. *Elwood*, 386 F.3d at 847 ("Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more.")

The majority opinions reconciled the two statutes by concluding that the halfway house placement *required* by Section 3624(c) during the last ten percent of the sentence did not affect the BOP's *permissive* authority under Section 3621(b) to place an inmate in an RRC at any earlier point in time. While this conclusion is largely correct, it fails to recognize the purposive component of Section 3624(c), as well as the maximum six-month time period established by Congress. Section 3624(c) does not apply to all RRC placements, only those made for the purpose of preparing the inmate for re-entry into society. Congress required the BOP, if practicable, to assure that the inmate spends "a reasonable part ... of the last 10 per cent[]" of his or her sentence under such conditions. However, Congress made clear that RRC placements for such re-entry purposes may "not [] exceed six months."

The majority approach fails to give effect to this language. For example, in *Woodall*, the inmate asserted that he committed his federal crimes because of inadequate transitional assistance by the BOP before completion of a prior federal sentence, and hence the sentencing judge recommended RRC placement for the last six months of a two-year sentence for the express purpose of assisting in his transition back to free society. *Woodall*, 432 F.3d at 238. The BOP then determined under the new BOP policy that the inmate should receive RRC placement for transitional assistance for ten percent of his sentence, approximately eleven weeks. *Id*. Rejecting the BOP regulations, the panel held that "the BOP may transfer an inmate to a CCC or like facility prior to the last six months or ten percent of his sentence." *Woodall*, 432 F.3d at 251. *See also Wedelstedt*, 477 F.3d at 1168 ("This court's determination that the BOP regulations are invalid entitles Wedelstedt to be considered for transfer to a CCC prior to the last ten percent of his

17

sentence.") (granting habeas relief to inmate seeking extended RRC placement for pre-release transitional assistance).  While the Court agrees that the Section 3621(b) permits the BOP to make RRC placements for purposes *other* than transition assistance unfettered by the constraints of Section 3624(c), the plain meaning of that subsection restricts any RRC placement made to ease an inmate's return to society to the six-month period expressly established by Congress.

      D.    <u>Medcalf's Request for Relief</u>

As noted above, the Court concludes that the BOP's regulations set forth at 28 C.F.R. §§ 570.20-.21 are not based upon a permissible construction of Sections 3621(b) and 3624(c) and are therefore invalid.  This does not, however, mandate the conclusion that Medcalf is entitled to the relief she seeks -- RRC placement for the entire last six months of her sentence.

As an initial matter, no court, including the four circuit courts of appeal, has held that the invalidation of the BOP regulations requires a six-month RRC placement.  Consistent with their decisions, those courts held merely that Section 3621(b) requires the BOP to make an individualized, good-faith evaluation of the five ennumerated factors in determining the appropriateness of an RRC placement without regarding to the invalidated regulations.  *E.g., Wedelstedt*, 477 F.3d at 1168; *Elwood*, 386 F.3d at 846.  The relief requested by Medcalf is therefore inconsistent with the decisional law she cites in support of her argument, with the statute itself, and with this Court's conclusions in this opinion.

The Court has concluded that Section 3624(c)'s ten percent/six-month limitation fully applies to any RRC placement sought for the purpose of assisting the inmate to "adjust to and prepare for the prisoner's re-entry into the community."  The grievance forms Medcalf filed with the BOP make clear that this was the purpose for which she sought earlier RRC placement:

> I am a single parent with very limited resources and would need the 180 days of RRC to find employment and establish a home for my child and myself. This time would also maximize my chance of becoming a productive citizen and succcessfully integrating into society, which is the purpose of a RRC, according to the BOP Program Statement.

[BOP Form 229, Dkt. 5 at pg. 2].  In his response, the warden stated:

> When considering an inmate for a RRC placement, a number of factors must be considered in determining whether an inmate should be referred, and if so, the length of placement.  Factors which are considered include the inmate's specific pre-release needs, length of sentence, institutional adjustment, and criminal history.  A RRC placement is meant to assist an inmate with the transition back into the community and is not intended to provide for all the inmate's needs.
>
> A review of your case indicates you are serving a 25-month sentence.  You arrived at the Federal Medical Center Satellite Camp (SCP) on October 25, 2006.  You currently have a projected release date of August 17, 2008, via Good Conduct Time, and a Pre-Release Preparation Date (PRPD) of June 13, 2008.  Your PRPD is the earliest you can receive a RRC placement.  Our guidelines do not allow placements prior to the PRPD. ...

[Request for Administrative Remedy, Part B - Response, Dkt. 5 at pg. 3].

The warden correctly identified several factors which the BOP must consider when making a placement decision as set forth in Section 3621(b).  The warden's statement that an RRC placement will be made only for pre-release transition assistance is based upon 28 C.F.R. §§ 570.20-.21, the BOP regulations invalidated here, and is therefore plainly incorrect.

The PRPD set for Medcalf by the BOP is just over two months before her projected release date, or approximately nine percent of the full term of her incarceration.  Section 3624(c), by its terms, limits RRC placement for transitional assistance purposes to "a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served." The phrase "not to exceed six months" qualifies the language immediately preceding it, "a reasonable part."  That phrase, however, is further clarified as "the last 10 per centum of the term to be served." This language makes clear that the phrase "not to exceed six months" qualifies the entire phrase it divides, "a reasonable part ... of the last 10 per centum of the term to be served."  Accordingly, Section 3624(c) limits RRC placements for the purpose of pre-release transition assistance to the lesser of ten percent of the inmate's term of incarceration or six months.

Therefore, an RRC placement for such purposes for six months would be permissible only for inmates serving full terms of sixty months or more.  For those such as Medcalf serving shorter

19

terms, transitional assistance RRC placements are limited to ten percent of their term of incarceration.  The preliminary recommendation of Medcalf's Unit Team for such placement for a two-month period appears to be fully consistent with this ten percent limitation.  Accordingly, Medcalf's request for a full six months of RRC placement for transitional purposes is inconsistent with the particularized assessment required by Section 3621(b) as well as the express limitation of Section 3624(c) to ten percent of her 25-month term of incarceration.  Medcalf's petition for a writ of habeas corpus must therefore be denied.

### CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

1.      Petitioner Medcalf's petition for a writ of habeas corpus is **DENIED.**

2.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondents.

3.      The Clerk of the Court shall send a copy of this Memorandum Opinion and Order to the United States Attorney for the Eastern District of Kentucky.

Signed on  April 1, 2008

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

20